IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA　　　　:

　　　v.　　　　　　　　　　　　　:　　　　CRIMINAL NO.　24-075

MARK BREWINGTON　　　　　　　:

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorneys, David Metcalf, United States Attorney for the Eastern District of Pennsylvania, and Christopher Diviny, Assistant United States Attorney, hereby files its sentencing memorandum.

### Preliminary Statement

There is little question that the defendant's crime is serious. Defendant Mark Brewington duped a federal program to care for injured federal workers. He lied about his injuries and his ability to return to work to steal $64,924 in Office of Workers' Compensation Programs ("OWCP") funds. An appropriate sentence is required to punish the defendant for his crime, to deter him and others from committing future crimes, and to protect society from further harm.

As set forth below, the advisory guidelines range is correctly set forth in the presentence report ("PSR") as 0-6 months. The government requests that the Court consider the advisory guidelines and sentence defendant within the guidelines.

1

**Background**

A.      Factual Background

The Department of Labor ("DOL"), an agency of the United States, through the Office of

Workers' Compensation Programs ("OWCP"), administered benefits under the Federal

Employees' Compensation Act ("FECA") to provide benefits to federal employees for work-

related injuries.

Mark Brewington was an employee of the USPS who was injured in a fall while working

on January 28, 2011. He received OWCP funds while he was unable to work due to his injury.

After his injury improved and he was able to return to work, he failed to do so, choosing to

fraudulently claim his injury continued to prevent him from working. Based on his false claims

he received funds under FECA case number 032089598.

The USPS-OIG discovered that the defendant was able to do physical activity

inconsistent with his purported continuing injury. For instance, the defendant was filmed

carrying nine large bags of mulch which he emptied and spread outside his house. He was

observed shoveling snow, mowing and weed-whacking his lawn, power-washing his house,

lifting and climbing a ladder, lifting several cases of water, raking his lawn, and sweeping his

property. He was seen several times grocery shopping, including lifting and carrying grocery

bags. Agents saw him driving for extended periods and carrying heavy objects up and down

stairs. During all this surveillance, the defendant moved with no apparent discomfort or limited

range of motion. At the same time, the defendant told his doctor that he had chronic pain and any

activity using his arms or back caused shooting pain to his arms, neck, and back. As a result, the

doctor believed Brewington was disabled totally by pain preventing him from lifting and

2

bending.

The USPS-OIG analyzed the defendant's OWCP payments from May 26, 2018, to September 14, 2019. Agents determined that the defendant received $64,924, spread over 18 unjustified OWCP payments as a result of his fraud. On October 25, 2019, a proposed notice of termination of OWCP payments was sent to the defendant with details of the USPS-OIG investigation of his ability to work.

On November 4, 2019, USPS-OIG agents went to the defendant's home to speak with him. The defendant told agents that the notice of proposed termination said, "everything that needed to be said." The defendant declined to view the surveillance video of his physical activity inconsistent with his purported disability. The defendant told agents he was not totally disabled and that he knew he was not entitled to OWCP funds. The defendant said that he had recovered sufficiently to return to work in 2015. When asked to explain his understanding of what he had done, the defendant said he "took a bunch of money from the government that he was not entitled to take." The defendant agreed to the termination of OWCP benefits on that day with the agents.

B.      Procedural History

On February 29, 2024, a federal grand jury returned a two-count indictment charging defendant Mark Brewington, a postal carrier, with two counts of theft of government funds, in violation of 18 U.S.C. § 641, all arising from his fraudulent receipt of worker compensation payments. On December 16, 2024, the defendant entered a guilty plea, pursuant to a plea agreement with the government, to Counts One and Two of the indictment.

**Sentencing Calculation**

A.      Statutory Maximum Sentence

The maximum penalty for theft of government funds, in violation of 18 U.S.C. 641, as alleged in Counts One and Two, is 10 years' incarceration, 3 years of supervised release, a $250,000 fine, and a $100 special assessment. The total maximum that the defendant faces is 20 years' incarceration, 3 years of supervised release, a $500,000 fine, and a $200 special assessment.

B.      Sentencing Guidelines Calculation

The Probation Office correctly calculated the defendant's advisory guideline range as follows: The base offense level for making a false claim to the United States is 6, pursuant to U.S.S.G. § 2B1.1(a)(2). The defendant's crime involved a loss of $64,924, between $40,000 and $95,000 within the meaning of USSG § 2B1.1(b)(1)(D), which increases his offense level by 6 levels pursuant to that section. As a result of his guilty plea, the offense level is decreased by 2 levels for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a). The defendant has no prior criminal record and meets the criteria of USSG § 4C1.1, resulting in a decrease of his offense level by 2 levels.   The total offense level is, therefore, 8. The defendant has no criminal history points, placing him in criminal history category I. The recommended guideline range is 0-6 months' imprisonment.

**Analysis of Sentencing Factors**

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) indicates that the Court should accept the calculation of the advisory guidelines as set forth above, review all other factors, and impose an appropriate sentence within the guidelines.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007). Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

This Court must also consider all of the sentencing factors set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

A.    The nature and circumstances of the offense and the history and characteristics of the defendant.

1.    The nature and circumstances of the offense

The nature and circumstances of this offense are serious. The defendant undermined the federal program aimed at providing resources to injured federal workers. He lied about the extent of his injuries and his ability to work, taking funds meant for those workers who

actually were injured and unable to work. His conduct places his crime squarely within the class of cases to which the applicable guidelines are addressed, and thus consideration of the nature of the offense, 18 U.S.C. § 3553(a), counsels in favor of a sentence within the guidelines range.

        2.        <u>The history and characteristics of the defendant</u>

The defendant is a 65-year-old man, born on December 24, 1959, who resides at 703 Perth Court, Grovetown, Georgia. The defendant has no prior criminal record.

B.       <u>The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.</u>

As described above, the defendant engaged in a very serious offense, making false claims for OWCP benefits. His conduct showed callous disregard for an important social safety net program. This conduct was not an isolated incident but continued for years. The defendant must be punished for his crime. An appropriate guideline sentence properly reflects these considerations and communicates to the defendant and society that the justice system will not tolerate this type of criminal behavior.

C.       <u>The need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.</u>

A guidelines sentence as requested by the government is necessary to deter other potential criminals and to protect the public from further criminal activity of the defendant. This type of criminal behavior of lying to falsely meet the requirements of important government programs undermines such programs and the public confidence in government. Those who are inclined to engage in such crimes must be deterred by the possibility of receiving an appropriate sentence. A guidelines sentence will achieve this objective.

D.      The need to provide the defendant with educational or vocational training, medical care,

or other correctional treatment in the most effective manner.

There is no need in this case to adjust the sentence in order "to provide the

defendant with needed educational or vocational training, medical care, or other correctional

treatment in the most effective manner . . . ." Id. § 3553(a)(2)(D).

E.      The need to avoid unwarranted sentence disparities among defendants with similar

records who have been found guilty of similar conduct.

While the Sentencing Guidelines are advisory, they remain the sole means

available for assuring some measure of uniformity in sentencing, fulfilling a key Congressional

goal in adopting the Sentencing Reform Act of 1984. Reference to the Guidelines, while

carefully considering the 3553(a) factors particularly relevant to an individual defendant, is the

only available means of preventing the disfavored result of basing sentences on the luck of the

draw in judicial assignments. The Third Circuit explained:

> Even under the current advisory system, district courts must "meaningfully consider"
> § 3553(a)(4), i.e., "the applicable category of offense . . . as set forth in the guidelines."
> The section of Booker that makes the Guidelines advisory explains that "the remaining
> system, while not the system Congress enacted, nonetheless continue[s] to move
> sentencing in Congress' preferred direction, helping to avoid excessive sentencing
> disparities while maintaining flexibility sufficient to individualize sentences where
> necessary." Booker, 543 U.S. at 264-65 (emphasis added). The Guidelines remain at
> the center of this effort to "avoid excessive sentencing disparities," and, as the Booker
> Court explained, the Sentencing Commission will continue "to promote uniformity in the
> sentencing process" through the Guidelines. Id. at 263. We have likewise observed that
> the "'Guidelines remain an essential tool in creating a fair and uniform sentencing regime
> across the country.'" Cooper, 437 F.3d at 331 (quoting United States v. Mykytiuk, 415
> F.3d 606, 608 (7th Cir. 2005)).

United States v. Ricks, 494 F.3d 394, 400 (3d Cir. 2007) (emphasis in original). Therefore, the

Supreme Court has held that "district courts must begin their analysis with the Guidelines and

remain cognizant of them throughout the sentencing process" in order to assure fair, proportionate, and uniform sentencing of criminal offenders. Gall, 552 U.S. at 50 n.6.

As Congress has codified, it is part of our sense of justice that similarly situated defendants should be given similar sentences. The Sentencing Guidelines provide a recommended sentencing range so that similarly situated defendants receive similar punishment. This Court should impose a sentence within the guideline range.

F.     The need to provide restitution to victims.

Restitution of $64,924 should be ordered to the Office of Workers' Compensation Program, Division of Federal Employees' Compensation, 200 Constitution Ave NW, Suite C-3523, Washington, DC 20210.

## Conclusion

The defendant committed a serious crime. For all the reasons set forth above, this Court should consider and accept the properly calculated guideline range and impose an appropriate sentence within the guideline range.

Respectfully submitted,

DAVID METCALF
United States Attorney


 /Christopher Diviny
CHRISTOPHER DIVINY
Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's Sentencing

Memorandum has been served by electronic filing upon:


Mara Meehan, Esq.
Federal Community Defender Office
Eastern District of Pennsylvania
The Curtis Center Bldg
601 Walnut Street, Suite 540 West
Philadelphia, PA 19106
Maranna_meehan@fd.org



 /Christopher Diviny
CHRISTOPHER DIVINY
Assistant United States Attorney


DATE: March 31, 2025

9